IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CHARLES DONELSON, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | ) Case No. 14-CV-1311-SMY-RJD |
| | ) |
| MICHAEL ATCHISON, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Pending before the Court is Defendants Michael Baker, Kevin Cartwright, and George Holton's Motion for Summary Judgment (Doc. 276). For the following reasons, the Court **DENIES** summary judgment with respect to Count 4 but **GRANTS** Defendants' motion in all other respects.

On November 25, 2014, Plaintiff commenced an action pursuant to 42 U.S.C. § 1983, alleging several constitutional violations (Docs. 1, 18). On January 29, 2015, the Court severed Plaintiff's claims into separate actions. The instant action pertains to Plaintiff's claim that Defendants violated his Eighth Amendment and First Amendment rights at Menard Correctional Center by denying access to the yard and failing to remedy the conditions of his confinement. Specifically, Plaintiff's claims are as follows:

**Count 1:** Eighth Amendment claim against Defendants Holton and Cartwright for denying Plaintiff access to the yard, thus preventing him from engaging in physical activity necessary to maintain his health;

**Count 2:** Eighth Amendment claim against Unknown (John Doe) Defendants and Defendants Baker and Cartwright, for placing Plaintiff in unsanitary cells and/or failing to remedy the cell conditions in response to Plaintiff's complaints;

> **Count 3:** First Amendment claim against Unknown (John Doe) Defendants, for housing Plaintiff in the cell contaminated with black mold in November 2012, in retaliation for his complaints and grievances over the denial of yard;
>
> **Count 4:** First Amendment claim against Defendant Baker, for refusing to remedy the unsanitary conditions in Plaintiff's cell in June 2013 (contamination with feces and urine), in retaliation for Plaintiff's grievances over his staff assaulter classification.

(Doc. 18.)

## Factual Background

From July 18, 2012 to October 19, 2013, Plaintiff was incarcerated at Menard Correctional Center ("Menard") (Doc. 277-2). Defendants Holton, Cartwright, and Baker served as correctional officers at Menard. From November 3, 2012 to February 1, 2013, Plaintiff was in disciplinary segregation (*Id.*; Doc. 277-1 at 17, 18).

The following facts are drawn from Plaintiff's deposition unless otherwise indicated. Plaintiff was not allowed to exercise from September 2012 to April 2013 (Doc. 277-1 at 10). During this time, the limited confines of his assigned cells prevented him from exercising inside his cell (*Id.* at 20).

In September 2012, the facility implemented a policy by which inmates classified as staff assaulters could only attend yard in a designated area (Box 16) (*Id.* at 11). Following the implementation of this policy, Defendant Holton refused to allow Plaintiff to attend yard with general population or Box 16, by stopping Plaintiff as he attempted to go to yard with the other inmates, instructing other correctional officers not to take Plaintiff to yard and telling him that he could not go (*Id.* at 13-14).

In or around December 2012, Defendant Cartwright replaced Defendant Holton as the cell house lieutenant (*Id.* at 14). Cartwright refused to allow Plaintiff to attend yard with general population or Box 16, by stopping Plaintiff as he attempted to go to yard with the other inmates,

instructing other correctional officers not to take Plaintiff to yard, and telling him that he could not go (*Id.*).

After filing grievances, Plaintiff was told that he could go to the gym, but despite his requests, he was never allowed to go to the gym (*Id.* at 14). He was also told that he could attend the yard used by the inmates in disciplinary segregation, but he only went one time (*Id.*). On September 25, 2012, Plaintiff submitted a grievance, complaining that he was told he had to attend yard in the segregation yard, which had no phones or recreational items (Doc. 5 at 6-7). He complained that the segregation yard was dangerous and that he could not go to the segregation yard because the inmates in disciplinary segregation used that yard (*Id.*).

On October 9, 2012, Plaintiff submitted a grievance in which he complained that he was told he had to attend yard in the segregation yard and requested access to a telephone that day (*Id.* at 8). In Plaintiff's Declaration, he attests that the disciplinary segregation yard was not designed for general population inmates as it lacked telephones and weight lifting equipment (Doc. 293-1 at 54).

Plaintiff suffered from spasms and pain in his foot, back, and stomach due to the lack of physical activity (Doc. 227-1 at 16). He experienced the spasms and pain prior to September 2012, but the lack of physical activity exacerbated his symptoms (*Id.*). Plaintiff also gained weight (*Id.*).

On February 1, 2013, Plaintiff was assigned to Cell 722 (Doc. 277-2). When he arrived at Cell 722, it had an unpleasant odor, feces and urine, and the mattress inside the cell was stained and also had an unpleasant odor (Doc. 2771 at 27). Plaintiff slept on the mattress only after wrapping it in several blankets, some of which he obtained from other inmates (*Id.* at 31-32). Plaintiff received cleaning supplies from other inmates later that day (*Id.* at 30, 43). The

sink did not have hot water and the cold water had weak water pressure, which made it difficult for Plaintiff to bathe in his cell (*Id.* at 32-33, 42). Plaintiff told Defendants Cartwright and Baker about the issues with Cell 722, but they did nothing to remedy the issues (*Id.* at 34, 42). According to Plaintiff's Declaration, when he was assigned to Cell 722, he refused to go to the showers because he felt the presence of other inmates presented a threat to his safety (Doc. 293-1 at 61).

Plaintiff was assigned to Cell 716 on June 14, 2013 (Doc. 277-2). As Defendant Baker escorted him to Cell 716 during the morning shift, Baker explained that Plaintiff was being subjected to poor cell conditions due to his complaints (Doc. 277-1 at 37, 47-48; Doc. 293-1 at 122). When Plaintiff arrived at Cell 716, it had an unpleasant odor, piles of trash, and a soiled mattress (Doc. 277-1 at 36-37). He confronted Defendant Baker about Cell 716, and Cartwright witnessed this confrontation. However, Baker and Cartwright did nothing to remedy the issues with Cell 716 (*Id.* at 38-39, 42, 44). When the correctional staff for the evening shift arrived, they provided Plaintiff with cleaning supplies and a new mattress (*Id.* at 45).

On September 23, 2013, Plaintiff was assigned to Cell 750 (Doc. 277-2). Cell 750 had no running water (*Id.* at 39). Plaintiff told Baker about the issue, but Baker did nothing to remedy the lack of running water (*Id.* at 40). After two hours in Cell 750, Plaintiff was assigned to the disciplinary segregation unit (*Id.*).

## Discussion

Pursuant to Federal Rule of Civil Procedure 56(a), the Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." When ruling on a motion for summary judgment, the Court "examine[s] the record and all reasonable inferences in the light most

favorable to the non-moving party." *Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055, 1060 (7th Cir. 2014). Summary judgment must be denied "if a material issue of fact exists that would allow a reasonable jury to find in favor of the non-moving party" (*Id.*).

The Eighth Amendment protects inmates from cruel and unusual punishment. U.S. Const., amend. VIII; *see also Berry v. Peterman*, 604 F.3d 435 (7th Cir. 2010). "While the Constitution does not require that prisons be comfortable, prison conditions do violate the Constitution where they deprive inmates of the minimal civilized measure of life's necessities." *Delaney v. DeTella*, 256 F.3d 679, 683 (7th Cir. 2001).

"A claim of constitutionally inadequate confinement requires a two-step analysis: (1) whether the conditions at issue were sufficiently serious so that a prison official's act or omission resulted in the denial of the minimal civilized measure of life's necessities; and (2) whether prison officials acted with deliberate indifference to the conditions in question." *Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008). "[A plaintiff] must also show that he suffered some cognizable harm from the overall lack of a sanitary environment, and that the official's deliberate indifference caused that harm. *Gray v. Hardy*, 826 F.3d 1000, 1006 (7th Cir. 2016).

*Count 1 – Access to Recreational Yard*

Plaintiff asserts Eighth Amendment claims against Defendants Holton and Cartwright for denying him access to the yard and preventing him from engaging in physical activity necessary to maintain his health. Defendants argue that Plaintiff cannot establish that Holton or Cartwright acted with deliberate indifference or that Plaintiff suffered harm due to lack of exercise.

The record contains insufficient evidence for a reasonable jury to find that Holton or Cartwright acted with deliberate indifference towards Plaintiff's health. Plaintiff is no medical expert and no medical records suggest that the lack of physical activity significantly affected his

medical condition. Moreover, even if the lack of physical activity resulted in the deterioration of Plaintiff's health, no evidence suggests that Holton or Cartwright had any knowledge of Plaintiff's health issues.

Further, although Plaintiff testified that Holton and Cartwright personally prevented him from attending yard with general population or in Box 16, there is no evidence that they had any role in preventing Plaintiff from going to the gym or attending yard in the segregation yard. Indeed, the record suggests that Plaintiff declined the opportunity to attend yard in the segregation yard. The record merely establishes that Holton and Cartwright prevented Plaintiff from attending his preferred recreational yard. On these facts, no jury could reasonably conclude that Defendants Holton and Cartwright acted with deliberate indifference in preventing Plaintiff access to the recreational yard. Accordingly, Defendants' Motion for Summary Judgment is granted with respect to Count 1.

*Count 2 – Conditions of Confinement*

Plaintiff asserts an Eighth Amendment claim against Defendants Baker and Cartwright for placing Plaintiff in unsanitary cells and failing to remedy the cell conditions in response to Plaintiff's complaints. Defendants argue that the cell conditions did not rise to the level of an Eighth Amendment violation and that Plaintiff suffered no harm as a result of the cell conditions.

To determine whether the record contains sufficient evidence to support an Eighth Amendment violation, the Court has reviewed cases with similar facts, including the following:

> In *Johnson v. Pelker*, 891 F.2d 136 (7th Cir. 1989), an inmate in disciplinary segregation alleged that the walls of his cells were smeared with feces; the cell had no running water; and the inmate was not provided with cleaning supplies or running water for three days. The Seventh Circuit found that the inmate sufficiently alleged an Eighth Amendment violation.
>
> In *Jackson v. Duckworth*, 955 F.2d 21 (7th Cir. 1992), an inmate in disciplinary segregation attested to inadequate plumbing, undrinkable water, infestation of

roaches and rodents, dirty bedding, the smell of human waste, and inadequate heating.[1] The Seventh Circuit found that the inmate provided sufficient evidence for his claim to survive summary judgment.

In *Vinning-El v. Long*, 482 F.3d 923 (7th Cir. 2007), an inmate in disciplinary segregation submitted evidence that, for six days, the walls of his cell were smeared with blood and feces; the floor was covered in water; and the inmate was deprived of a mattress, sheets, and cleaning supplies. The Seventh Circuit found that the inmate provided sufficient evidence for his claim to survive summary judgment.

In *Sain v. Wood*, 512 F.3d 886 (7th Cir. 2008), an inmate submitted evidence that, for six years, his cell was infested with cockroaches, not air conditioned, and the faulty plumbing emitted a foul odor. The Seventh Circuit found that the evidence did not support conditions that rose to the level of an Eighth Amendment violation.

In *Moore v. Lemke*, 2016 WL 4530308 (N.D. Ill. 2016), an inmate submitted evidence that, for sixteen days, he was placed in a cell that was dirty and filled with trash, had filthy toilet and sinks, and had no working lights; and the inmate was deprived of cleaning supplies for three days. The court found that the conditions of the cell did not rise to level of an Eighth Amendment violation.

In *Rodriguez v. Veath*, 2017 WL 1197241 (S.D. Ill. 2017), an inmate in disciplinary segregation submitted evidence that, for more than two months, he was placed in a cell with poor ventilation, extreme temperatures, a stained mattress, and malfunctioning plumbing. The inmate was also placed in another cell that smelled of urine and contained human waste, and, although the inmate had access to running water, a towel, and soap, the inmate did not receive cleaning supplies for four days. The court found that the inmate failed to demonstrate an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" and granted summary judgment on the inmate's procedural due process claim.[2]

Upon Plaintiff's arrival to Cell 722 in February 2013, the cell (as described by Plaintiff) bore some resemblance to the cells in *Johnson, Jackson, and Vinning-El*. However, unlike the plaintiffs in those cases, Plaintiff was able to substantially remedy the sanitation issues by

---

[1] Here, the Court relies, in part, on the additional factual details regarding this case presented in *Jackson v. Duckworth*, 953 F.2d 646 (7th Cir. 1992).

[2] Although *Rodriguez* discusses a procedural due process claim, it remains instructive for purpose of Eighth Amendment claims as the *Rodriguez* court relied on Eighth Amendment cases in reaching its conclusion and considering the relationship between the Eighth Amendment and procedural due process claims in disciplinary segregation cases. *See Gillis v. Litscher*, 468 F.3d 488, 492 (7th Cir. 2006) ("[T]here can, in fact, be a liberty interest – short of an Eighth Amendment violation – triggering procedural requirements.").

obtaining cleaning supplies and blankets from other inmates on the same day he arrived to the cell. Additionally, Cell 722 had a functional toilet and a sink with drinkable water. Plaintiff alleges that the sink water was not suitable for purposes of bathing, but the record indicates that Plaintiff was allowed access to the showers. For these reasons, the Court concludes that the evidence in the record would not support a conclusion by a reasonable jury that the conditions of Cell 722 were unconstitutional.

Plaintiff's claim regarding Cell 716 similarly fails because the correctional staff addressed the unsanitary conditions on the same day Plaintiff was assigned to the cell. Plaintiff's claim regarding Cell 750 fails due to minimal duration of his assignment to the cell.

Based on the foregoing, the Court concludes that the record raises no material issue of fact as to whether Plaintiff was subjected to unconstitutional conditions of confinement. Accordingly, Defendants' Motion for Summary Judgment is granted with respect to Count 2.

*Count 4 – First Amendment Retaliation*

Plaintiff states a First Amendment claim against Defendant Baker for refusing to remedy the unsanitary conditions in Cell 716, in retaliation for Plaintiff's grievances. Defendants argue that Plaintiff cannot demonstrate that Baker was aware of Plaintiff's grievances or that Baker refused to remedy the conditions of Cell 716 in retaliation for Plaintiff's grievances.

"To prevail on a First Amendment retaliation claim, [a plaintiff] must ultimately show that (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the Defendants' decision to take the retaliatory action." *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009). "Once the plaintiff proves that an improper purpose was a motivating factor, the burden shifts to the defendant . . . to prove by a

preponderance of the evidence that the same actions would have occurred in the absence of the protected conduct." *Spiegla v. Hull*, 371 F.3d 928, 943 (7th Cir. 2004); *Babcock v. White*, 102 F.3d 267, 275 (7th Cir. 1996).

In retaliation cases, even if the alleged conduct by itself would likely not violate the Constitution, "if the acts were taken in retaliation for the exercise of a constitutionally protected right, then they are actionable under § 1983." *Bridges v. Gilbert*, 557 F.3d 541, 552 (7th Cir. 2009). Plaintiffs need only demonstrate conduct that would "deter a person of ordinary firmness from exercising First Amendment activity in the future" (*Id.*).

On June 14, 2013, Plaintiff was assigned to Cell 716. Plaintiff testified that, as Baker escorted him to the cell, Baker told him that he was being subjected to poor cell conditions due to his complaints. When Plaintiff arrived at Cell 716, it had an unpleasant odor, piles of trash, and a soiled mattress. Plaintiff confronted Baker about the condition of the cell, but Baker did nothing to remedy the situation.

Here, the record establishes that Plaintiff engaged in protected activity by filing grievances. There is also sufficient evidence in the record that Baker was aware of the grievances and the complaints Plaintiff made. Given the condition of the cell as described by Plaintiff, leaving an individual in such a cell for several hours would likely dissuade an ordinary person from engaging in protected speech. When viewed in the light most favorable to Plaintiff, The statement allegedly made by Baker as he escorted Plaintiff to Cell 716 is sufficient evidence of retaliatory motive. Accordingly, Defendants' Motion for Summary Judgment is denied with respect to Count 4. Plaintiff's First Amendment retaliation claim against Defendant Baker shall proceed to trial.

*Qualified Immunity*

Defendants argue that they are entitled to qualified immunity. The Court need only consider whether qualified immunity applies to Count 4 because it disposed of Plaintiff's other claims discussed above.

Generally, government officials are protected from civil liability when performing discretionary functions under the doctrine of qualified immunity so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also Alvarado v. Litscher*, 267 F.3d 648, 652 (7th Cir. 2001). Thus, in evaluating a claim of qualified immunity, the Court engages in a two-step analysis. First, the Court considers whether a plaintiff's claim states a violation of his constitutional rights. If so, the Court determines whether those rights were clearly established at the time the violation occurred. *Jacobs v. City of Chicago*, 215 F.3d 758, 766 (7th Cir. 2000).

For a constitutional right to be clearly established, its contours "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Estate of Escobedo v. Bender*, 600 F.3d 770, 779 (7th Cir. 2010) (quoting *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)). The unlawfulness of a particular official's action must be apparent "in light of the pre-existing law" (*Id.*). A party may demonstrate that a right was clearly established by presenting a closely analogous case establishing the defendant's conduct was unconstitutional or by presenting evidence the defendant's conduct was so patently violative of a constitutional right that reasonable officials would know without guidance from a court. *See Hope*, 536 U.S. at 739–40.

Defendants argue that they are entitled to qualified immunity because Plaintiff cannot

produce any evidence that Baker was aware of Plaintiff's grievances. However, Plaintiff's testimony that Baker commented on the grievances constitutes such evidence. Accordingly, Defendant Baker is not entitled to qualified immunity with respect to Count 4.

*John Doe Defendants*

As a final matter, John Doe defendants remain in the case. In the Court's Screening Order, Plaintiff was given the opportunity to conduct discovery as to the identity of the John Doe defendants and to amend the Complaint to identify them (Doc. 18). However, the Court ultimately denied Plaintiff's Motion for Leave to Amend the Complaint in which Plaintiff sought to identify the John Doe defendants, finding that amending the complaint would be futile due to the statute of limitations (Doc. 215). Accordingly, Plaintiff's claims against the John Doe defendants (Counts 2 and 3) are dismissed.

## Conclusion

It is hereby **ORDERED** that Defendants' Motion for Summary Judgment (Doc. 276) is DENIED with respect to Count 4 against Defendant Baker, but **GRANTED** in all other respects and as to all other defendants. It is Further **ORDERED** that Plaintiff's claims against the John Doe defendants are **DISMISSED.** The Clerk of Court shall enter judgment for Defendants Kevin Cartwright and George Holton and against Plaintiff Charles Donelson at the close of the case. Count 4 against Defendant Michael Baker will proceed to trial.

**IT IS SO ORDERED.**

**DATE: December 4, 2017**

                                                      **s/ Staci M. Yandle**
                                                      **STACI M. YANDLE**
                                                      **United States District Judge**